# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bernard Banks,                          :
                                        :
                    Petitioner          :
                                        :
          v.                            :    No. 1452 C.D. 2015
                                        :
Pennsylvania Board of Probation         :    Submitted: December 31, 2015
and Parole,                             :
                                        :
                    Respondent          :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MARY HANNAH LEAVITT, Judge[1]
          HONORABLE ANNE E. COVEY, Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  April 27, 2016**

Bernard Banks petitions for review of the Order of the Pennsylvania Board of Probation and Parole (Board) denying his request for administrative relief and affirming the recalculation of Banks' maximum sentence date (max date) as July 30, 2016.  On appeal, Banks argues that the Board erred in calculating his new max date because it did not give him the correct amount of credit for his pre-sentence confinement.  For the following reasons, we vacate and remand.

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

Banks is serving a variety of sentences, including: (1) one year, four months to two years, eight months for receiving stolen property; (2) a consecutive six months to one year sentence for criminal conspiracy and forgery; (3) a consecutive one to two years for criminal use of a communication facility; and (4) a consecutive one to two year sentence for escape from detention. His minimum date was March 24, 2011 and his original max date was January 22, 2015. The Board paroled Banks on December 7, 2012 to a community corrections residency (CCR), and he was released on February 25, 2013. When he failed to report to his assigned CCR, the Board declared Banks delinquent on February 25, 2013. Banks' whereabouts since his release were unknown until, on July 14, 2013, he was arrested by the Archibald Police Department in Lackawanna County. Banks was returned to custody at State Correctional Institution (SCI) Waymart on July 15, 2013. The Board recommitted Banks as a technical parole violator (TPV) to serve six months with a parole violation max date of June 10, 2015, and provided for his automatic reparole on January 14, 2014 so long as certain criteria were met.

On September 10, 2013, federal authorities indicted Banks for new criminal charges,[2] and the Board lodged a new detainer based on those charges against Banks on September 18, 2013. (Warrant to Commit and Detain, C.R. at 27; Criminal Arrest and Disposition Report, C.R. at 29.) Banks waived both counsel and a detention hearing on November 7, 2013. The Board revised its August 19, 2013 action by adding that Banks would be detained pending the disposition of the new criminal charges.

---

[2] Banks was arrested on charges of: (1) conspiracy, (2) "[u]ttering [c]ounterfeit [o]bligations [a]iding and [a]betting," and (3) "[d]ealing in [c]ounterfeit [o]bligations [a]iding and [a]betting." (Criminal Arrest and Disposition Report, C.R. at 29.)

A Magistrate Judge for the United States District Court for the Middle District of Pennsylvania (Middle District Court) granted the federal authorities' request to issue a "Writ of Habeas Corpus ad prosequendum" (Writ/ATA) on January 14, 2014, for Banks' attendance at his federal arraignment hearing on January 27, 2014. (Criminal Docket for Case #: 3:13-cr-00195-RPC-2 (Federal Criminal Docket) at 3, C.R. at 49.) On January 24, 2014, Banks was transferred from SCI-Mahanoy to Federal authorities in Harrisburg for his arraignment. (Moves Report, C.R. at 87.) Following arraignment, at which Banks pleaded not guilty, he was "ordered detained in federal custody" by the Magistrate Judge. (Federal Criminal Docket at 3, C.R. at 49.) Banks ultimately withdrew his not guilty plea and pleaded guilty to conspiracy and uttering counterfeit obligations on September 3, 2014, which was accepted by a Middle District Court Judge on September 24, 2014. Banks was sentenced on March 19, 2015 to a term of forty-one months on each count to be served concurrently in the custody of the federal Bureau of Prisons (BOP), with three years of supervised release. (Federal Criminal Docket at 7-8, C.R. at 53-54.)

Following the federal conviction, but before sentencing, the Board notified Banks on October 29, 2014 that a revocation hearing would be held based on his new criminal conviction. However, Banks waived that revocation hearing, as well as his right to counsel, and admitted to being convicted of the federal offenses on October 29, 2014. By Board Decision mailed on April 13, 2015, the Board modified its November 26, 2013 Board Action by deleting the automatic reparole provision, reaffirming the prior action to recommit Banks as a TPV to serve six months, and recommitting Banks "to a State Correctional Institution as a convicted parole violator [(CPV)] when available to serve your unexpired term concurrently

3

for a total of your unexpired term pending sentencing on your federal conviction." (Notice of Board Decision, April 13, 2015, at 1, C.R. at 74.)

The Board recalculated Banks' new max date based on a return to custody date of March 19, 2015 via Order to Recommit dated June 22, 2015. The Board determined that Banks had 696 days remaining on his original sentence, gave Banks credit for 197 days, from July 14, 2013 until January 27, 2014, which left Banks with 499 days of backtime remaining. (Order to Recommit, C.R. at 89.) Adding 499 days to March 19, 2015 resulted in a new max date of July 30, 2016. By Board action of July 14, 2015, the Board recommitted Banks as a TPV "to serve 6 months, and as a [CPV] to serve [his] unexpired term of 1 year, 10 months, 28 days concurrently, for a total of 1 year, 10 months, 28 days," with a max date of July 30, 2016. (Notice of Board Decision, July 14, 2015, C.R. at 91.)

Banks filed a challenge to the Board's recalculation of his max date on July 20, 2015, asserting that when he was picked up from the SCI pursuant to the Writ/ATA, he remained in "state custody" for fourteen months while he fought the federal charges. (Administrative Remedies Form, C.R. at 95.) Banks argued that, notwithstanding the Writ/ATA, he had been in state custody continuously since July 14, 2013 and should have been granted credit for that entire time against his state sentence.

The Board denied Banks' administrative challenge reasoning that, when he became a CPV he "automatically forfeited credit for all of the time that [he] spent on parole." (Board Decision, July 30, 2015, at 1, C.R. at 100 (citing Section 6138(a)(2) of the Prisons and Parole Code (Parole Code), 61 Pa. C.S. §

4

6138(a)(2)).[3]) It further held that Banks was only entitled to credit for the time he served solely on the Board's warrant, and that he was only detained solely on the Board's warrant from July 14, 2013 to January 27, 2014, after which he entered into federal custody. (Board Decision, July 30, 2015, at 1, C.R. at 100 (citing Gaito v. Pennsylvania Board of Probation and Parole, 412 A.2d 568 (Pa. 1980).) Making the same calculation as set forth in the June 22, 2015 Order to Recommit, the Board denied Banks' petition and affirmed its prior decision. Banks now petitions this Court for review of the Board's denial.[4]

On appeal, Banks argues that the Board did not give him credit for all of the time he is owed. According to Banks, even though he was transferred to federal authorities on the Writ/ATA, he was continuously serving his state sentence and never left the jurisdiction of the DOC. Therefore, pursuant to Morgan v. Pennsylvania Board of Probation and Parole, 814 A.2d 300 (Pa. Cmwlth. 2003), Montgomery v. Pennsylvania Board of Probation and Parole, 808 A.2d 999 (Pa. Cmwlth. 2002), and Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002),[5] Banks argues that Pennsylvania retained primary jurisdiction, and he is entitled to credit toward his original state sentence for the entire period he was in pre-sentence confinement.

---

[3] Section 6138(a)(2) provides that a CPV may, at the Board's discretion, be recommitted as a parole violator and "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph (2.1), shall be given no credit for the time at liberty on parole." 61 Pa. C.S. § 6138(a)(2).

[4] In reviewing the Board's Orders, our review "is limited to determining whether the Board's findings are supported by substantial evidence, an error of law [was] committed, or whether any of the parolee's constitutional rights were violated." Andrews v. Pennsylvania Board of Probation and Parole, 516 A.2d 838, 841 n.10 (Pa. Cmwlth. 1986).

[5] Ruggiano was superseded on other grounds by statute as recognized in Smith v. McKean, 580 Fed. Appx. 98, 99 (3d Cir. 2014).

The Board responds that Banks is not entitled to credit for the 416 days of pre-sentence confinement he spent in federal custody because, during that time period, Banks was not confined solely on the Board's warrant. The Board argues that from January 27, 2014 until Banks was sentenced by the Middle District Court, he was detained on both his new federal charges and the Board's detainer and, therefore, pursuant to Gaito, 412 A.2d at 571, Banks was not entitled to credit against his original sentence for that time period. Rather, that credit, according to the Board, must be applied to Banks' new federal sentence and not his prior state sentence. The Board asserts that Morgan does not support Banks' position as it is distinguishable and does not alter Gaito, nor does the exception to Gaito set forth in Martin v. Pennsylvania Board of Probation and Parole, 840 A.2d 299 (Pa. 2003) apply here. Finally, the Board observes that although the present matter is similar to that in Baasit v. Pennsylvania Board of Probation and Parole, 90 A.3d 74 (Pa. Cmwlth. 2014), a different result is warranted because, in that case, the inmate remained primarily in an SCI except for multiple transfers to federal custody via temporary writs. Moreover, the Board argues, Section 6138(a)(5) and (5.1) of the Parole Code, 61 Pa. C.S. § 6138(a)(5), (5.1), cited in Baasit, involves the order in which the original Pennsylvania state sentence and new federal or other jurisdiction sentences should be served and not pre-sentence credit. To apply Baasit and Section 6138(a)(5.1) as effecting pre-sentence credit would render Gaito obsolete, which, the Board contends, was not the intention of subsection 5.1.

The assignment of pre-sentence confinement credit has long been governed by our Supreme Court's decision in Gaito. In Gaito, the Court held that:

> if a defendant is being held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time which he spent in custody shall

6

be credited against his original sentence. If a defendant, however, remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence.

Gaito, 412 A.2d at 571. Exceptions to Gaito exist, such as that set forth in Martin, which requires that "where an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to either the new sentence or the original sentence." Martin, 840 A.2d at 309. Thus, if no incarceration is imposed on the new charges, or the charges are *nolle prossed*, or the parolee is acquitted, the pre-sentence confinement time should be credited against the original sentence, even though the parolee was not being held solely on the Board's detainer. Id. Similarly, if the parolee is sentenced to a period less than the time of pre-sentence confinement, the remaining time should be credited against the original sentence. See Jones v. Pennsylvania Board of Probation and Parole, 872 A.2d 1283, 1285 (Pa. Cmwlth. 2005) (parolee was entitled to credit against his original sentence for the four months and seventeen days he was detained on both the Board's detainer and on new charges where he was sentenced on the new charges to forty-eight hours to twelve months and was paroled after serving forty-eight hours).

Although Gaito and Martin remain valid, the legislature amended Section 6138(a) of the Parole Code in 2010, adding the following emphasized language to subsection 5 and a new subsection, 5.1. Those provisions now state:

(5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed *by a Pennsylvania court* shall precede the commencement of the new term imposed in the following cases:
(i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.

7

(ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.

(iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

(5.1) If the parolee is sentenced to serve a new term of total confinement by a Federal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), the parolee shall serve the balance of the original term before serving the new term.

61 Pa. C.S. § 6138(a)(5), (5.1) (emphasis added).

In Baasit, this Court "re-examine[d] credit issues between federal criminal sentences and state criminal sentences" based on the newly added Section 6138(a)(5.1) of the Parole Code. Baasit, 90 A.3d at 75, 82. Baasit involved an inmate who sought credit against his original state sentence for the "four years [that] he spent in pre-federal sentence confinement." Id. at 75. As here, the inmate was arrested on new charges and detained at an SCI pursuant to a Board detainer. While in DOC custody on the Board's detainer, the inmate was arrested on federal charges, and a federal Magistrate Judge issued a detention order committing the inmate to custody pending trial on the federal charges. This resulted in the inmate being confined on both the Board and federal detainers. The inmate was transferred briefly pursuant to writs for court appearances, but returned to an SCI after each appearance. Id. at 77. The inmate pleaded guilty to the federal charges, the Board held a revocation hearing, and it recommitted the inmate as a CPV to serve backtime, when available, pending the sentencing on the federal charges. In recalculating the inmate's maximum date, the Board gave him credit for 277 days, the period between his initial arrest and detainer and the date the federal Magistrate Judge issued the detention order on the federal charges. Id. at 76. The inmate

8

challenged the Board's recalculation arguing that "the Board should have awarded him credit toward his backtime for the balance of his pre-sentence confinement." Id. Citing Gaito, the Board denied relief because the inmate was not confined solely on the Board's detainer during the time for which he sought credit and, therefore, was not entitled to credit against his original sentence for his pre-sentence confinement. Id.

On appeal to this Court, the inmate argued that he was entitled to credit against his original sentence for the full time of his pre-sentence confinement, and challenged the Board's contention that he was unavailable to serve his state parole violation time until he was returned to state custody following his federal conviction. Id. at 76-77. He asserted, *inter alia*, that because he remained in DOC's custody and control and the Board's detainer pre-dated the Federal detention order, the doctrine of primary jurisdiction and the enactment of Section 6138(a)(5.1) required that his pre-sentence confinement credit be applied to his state parole backtime and not his new federal sentence. Id. at 77-78. We reviewed Gaito, Martin, and Section 6138(a)(5.1), and held that Martin "represent[ed] some flexibility in credit assignments from the approach under the 1980 decision in Gaito," and Section 6138(a)(5.1) "constituted a significant change in legislative policy regarding the order of service of sentences where the [CPV] received a new sentence in a federal court or a court of another jurisdiction." Baasit, 90 A.3d at 82. This Court explained that the Board's "continued reliance on . . . Gaito[] explains the Board's apparent position that [i]nmate can serve backtime on his original state sentence after he completes his new federal sentence," which is contrary to new subsection 5.1. Baasit, 90 A.3d at 82. Moreover, we explained that

9

> [o]ur conclusion *that credit here should be awarded according to new subsection 5.1 of the Parole Code* is also supported by the primary jurisdiction doctrine. Under that doctrine the sovereign which first arrests a defendant is afforded primary jurisdiction. . . . Our conclusion is also consistent with the Supreme Court's more flexible approach to credit, as set forth in <u>Martin</u>.
>
> In addition, 18 U.S.C. § 3585(b)[6] precludes the [Board] from granting [i]nmate credit toward his new federal sentence for any time credited toward his original state sentence. As such, there is no possibility that [i]nmate will receive double credit for his pre-sentence confinement.

<u>Baasit</u>, 90 A.3d at 83 (emphasis added). Because the Board apparently believed it lacked the discretion to award credit for the pre-sentence confinement time at issue, we vacated the Board's order and remanded to the Board "for reconsideration of [i]nmate's entitlement to credit against his original state sentence for confinement before the new federal sentence was imposed." <u>Id.</u>

The Board argues that <u>Baasit</u> should not apply because Banks was not confined in an SCI at all between January 27, 2014 and March 19, 2015, while the inmate in <u>Baasit</u> was primarily confined in an SCI. However, the jurisdiction of the facility in which the inmate is confined is not determinative. For example, we have held that, where an inmate is transferred pursuant to a Writ/ATA, he does not

---

[6] This provision states that

> [a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(b).

10

leave the Department's jurisdiction, even though he may be physically held in a facility outside of its jurisdiction. Morgan, 814 A.2d at 303. The purpose of the Writ/ATA is to enable the inmate to appear before a federal court to answer to new charges, not to serve a federal sentence. Id. While the inmate is being presented to the court on the new charges, he remains "'in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the person'" and "'[t]he receiving sovereign . . . is, therefore, considered simply to be 'borrowing' the prisoner.'" Id. (quoting Ruggiano, 307 F.3d at 125 n.1). The amount of time the inmate is physically in the other facility is not relevant to the jurisdictional issue. The inmate in Baasit was released on a Writ/ATA for "brief time periods"[7] to attend court appearances, Baasit, 90 A.3d at 77, yet remained in the Department's jurisdiction. The Board attempts to distinguish Baasit on the basis of how much time the inmate was physically held by the other authority, which does not recognize that Banks remained in the Department's custody. Moreover, the Board's proposed distinction would add unnecessary complexity to the analysis by requiring an evaluation of the amount of time the inmate is physically in another facility to determine whether pre-sentence confinement credit is warranted. There is no reason to create such a distinction where the inmate, regardless of his physical location, remains in the Department's jurisdiction, Morgan, 814 A.2d at 303, and where Section 6138(a)(5.1) directs that a parolee must complete his original sentence before beginning a new sentence in a different jurisdiction.[8]

---

[7] He was released in "November 2008, January 2009, August 2010, July 2011 and February, March and April in 2012." Baasit, 90 A.3d at 77.

[8] We note that in this situation another jurisdiction pays for the confinement of an individual who is actively serving a Pennsylvania parole violation sentence.

11

Our holding in this matter also is supported by our recent decision in Smith v. Pennsylvania Board of Probation and Parole, __ A.3d __ (Pa. Cmwlth., No. 1007 C.D. 2015, filed February 23, 2016),[9] in which we applied Baasit to direct the Board to give pre-sentence confinement credit under slightly different circumstances. In that case, the parolee was arrested in North Carolina on January 28, 2013 while on parole from a Pennsylvania sentence, and the Board lodged a detainer against him on January 29, 2013. Id. at __, slip op. at 2. He was subsequently charged by the federal authorities on April 23, 2013, detained on those new charges on May 2, 2013, returned to Pennsylvania on July 30, 2013, and placed in a county prison pursuant to the federal detainer pending trial. Id. at 2-3. Therefore, Smith was incarcerated on both the Board's detainer and new federal charges at that time. The Board gave the parolee credit for the time served solely on the Board's detainer, from January 29, 2013 to May 2, 2013, even though he was being physically held in North Carolina. The Board, however, denied pre-sentence credit for the period beginning May 2, 2013 until June 3, 2014, when he pleaded guilty to the federal charges. Id. at 4. Smith appealed and argued that, based on Baasit and Section 6138(a)(5.1), "the Board must apply the pre-sentence confinement credit to his original sentence." Smith, __ A.3d at __, slip op. at 4, 6. We agreed, explaining that our decision in Baasit held that "under Section 6138(a)(5.1) . . . pre-sentence time where there was both a state and federal detainer should be calculated against state time." Smith, __ A.3d at __, slip op. at 8. We rejected the Board's arguments based on Gaito and that the Baasit-court misinterpreted Section 6138(a)(5.1) by requiring the Board to apply the pre-

[9] Although the Board did not appeal Baasit, it did file, on March 24, 2016, a petition for allowance of appeal with the Supreme Court in Smith at docket No. 224 MAL 2016.

12

sentence confinement credit to the original state sentence. <u>Smith</u>, __ A.3d at __, slip op. at 9. Accordingly, we held that

> as a result of subsection 5.1, a parolee must serve the entirety of his original term before serving his new federal or different jurisdiction sentence, the parolee no longer falls under the now-limited <u>Gaito</u> rule. As such, *any pre-sentence confinement credit earned by the parolee must be applied to his original sentence*. <u>Baasit</u>.

<u>Id.</u> at __, slip op. at 11 (emphasis added). Thus, in <u>Smith</u>, we held that pre-sentence confinement credit must be applied to the original sentence even though the parolee was being held on the Board's detainer in North Carolina and, subsequently, in a county prison on both the Board's detainer and the federal detainer.

In summary, Section 6138(a)(5.1) mandates that Banks serve his original sentence before serving his new federal sentence, and both <u>Baasit</u> and <u>Smith</u> held that this provision mandates that "any pre-sentence confinement credit earned by [Banks] must be applied to [Banks'] original sentence" even if he is being held on both a federal and Board detainer. <u>Smith</u>, __ A.3d at __, slip op. at 8, 11; <u>Baasit</u>, 90 A.3d at 82-83. We observe, as the <u>Baasit</u> court did, that there is no concern of Banks receiving double credit for this time period because "18 U.S.C. § 3585(b) precludes the [Board] from granting [Banks] credit toward his new federal sentence for any time credited toward his original state sentence." <u>Baasit</u>, 90 A.3d at 83.

Banks was detained solely on the Board's detainer from July 14, 2013 until January 27, 2014, and on both the Board's detainer and the federal detention order from January 27, 2014 until his sentencing on March 19, 2015. The Board only awarded Banks credit for the 197 days, from July 14, 2013 until January 27, 2014,

based on <u>Gaito</u>.  However, based on Section 6138(a)(5.1) and our decisions in <u>Baasit</u> and <u>Smith</u>, Banks "must be awarded pre-sentence confinement credit on his original state sentence for the period from" January 27, 2014 to March 19, 2015. <u>Smith</u>, __ A.3d at __, slip op. at 11.

Accordingly, we vacate the Board's recalculation decision and remand the matter to the Board to recalculate and award Banks the appropriate pre-sentence confinement credit to his original state sentence.

_____
**RENÉE COHN JUBELIRER, Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Bernard Banks,                              :
                                            :
                    Petitioner              :
                                            :
          v.                                :    No. 1452 C.D. 2015
                                            :
Pennsylvania Board of Probation             :
and Parole,                                 :
                                            :
                    Respondent              :

**O R D E R**

**NOW**, April 27, 2016, the Order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is hereby **VACATED** and the case is **REMANDED** to the Board for further proceedings consistent with the foregoing opinion.


Jurisdiction relinquished.


_____
**RENÉE COHN JUBELIRER, Judge**